# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DEBORAH GRAYDEN, CHARLES
JACKSON, MAGDALY LAURENCEAU, et
al.,**

**Plaintiffs,**

-vs-                                                            Case No.  6:00-cv-888-Orl-22DAB

**THE CITY OF ORLANDO,  FLORIDA;
CODE ENFORCEMENT BOARD FOR
THE CITY OF ORLANDO, FLORIDA; and
MIKE RHODES, individually,**

**Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR ATTORNEY FEES AND LITIGATION EXPENSES (Doc. No. 276)** |
| **FILED:** | **October 29, 2004** |
| _____ | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part. | |
| **MOTION:** | **PLAINTIFF LAWRENCE'S MOTION FOR ATTORNEY'S FEES AND EXPENSES (Doc. No. 277)** |
| **FILED:** | **October 29, 2004** |
| _____ | |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED as MOOT**. _See_ Doc. No. 290. | |

### BACKGROUND

Plaintiffs are all former tenants of an apartment complex that was condemned by the City Defendants. Plaintiffs filed this action under 42 U.S.C. § 1983 and the Fair Housing Act, alleging that Defendants failed to provide them with due process in evicting them from the condemned premises. Plaintiffs sought declaratory and injunctive relief, as well as damages, against the City, the Code Enforcement Board ("the Board"), and against Chief Code Inspector Mike Rhodes, individually. Plaintiffs challenged 1) the City's policy of not providing tenants with notice of code enforcement actions that adversely affect tenants' interests; 2) the City and Board's failure to provide a meaningful due process hearing; 3) Rhodes' actions in not giving tenants notice of their due process rights; and 4) the discriminatory actions of the City and Rhodes.

The course of the litigation is cogently set forth in Plaintiffs' brief. The action was filed on July 12, 2000, with three original Plaintiffs seeking a temporary restraining order to halt the condemnation and demolition of the apartment complex, to halt any adverse action that did not provide them with the opportunity for a hearing, and to obtain alternative housing (Doc. Nos. 1, 2). The District Court denied the request, based on the City's representation that it would provide a hearing to the tenants (Doc. No. 6). The Complaint was amended twice, adding Plaintiffs and the Board as an additional Defendant (Doc. Nos. 26, 31).

The City and Rhodes answered the Corrected Second Amended Complaint (Doc. No. 34.) The Board unsuccessfully moved to dismiss the Complaint (Doc. No. 36), and eventually answered (Doc. No. 62). Rhodes moved for summary judgment, claiming an entitlement to qualified immunity (Doc. No. 43).

The Fair Housing claim was withdrawn by most of the Plaintiffs on August 1, 2001 (Doc. No. 77) and dismissed by the Court with respect to the remaining Plaintiffs on January 4, 2002 (Doc. No. 157).

Following discovery,[1] the parties filed for summary judgment (Doc. Nos. 78, 82).  The three summary judgment motions (including Rhodes' earlier motion based on qualified immunity) were referred to the undersigned Magistrate Judge and a Report and Recommendation was issued, recommending that all of the motions be denied (Doc. No. 127, 144).  The parties filed their objections, and the District Court adopted the report, in large measure, on January 4, 2002 (Doc. No. 157).

Rhodes appealed the denial of his qualified immunity defense, and the Eleventh Circuit reversed and remanded the case in *Grayden v. Rhodes,* 345 F. 3d 1225 (11th Cir. 2003).  In that opinion, the Eleventh Circuit found that Plaintiffs had a constitutional right to contemporaneous notice of their right to a hearing on the condemnation, but held that the right was not clearly established, for qualified immunity purposes, at the time of the violation. *Id.*  Thus, on remand, the District Court dismissed the claims against Rhodes and invited the parties to file summary judgment motions, in view of the Eleventh Circuit's findings (Doc. No. 174).

Plaintiffs filed their motion for summary judgment against the City for failing to provide adequate notice of their right to seek a hearing, and against the City and the Board for failing to provide a prompt and meaningful post-deprivation hearing (Doc. No. 175).  The City and the Board opposed the motion (Doc. No. 179).  The District Court adopted the undersigned's Report and Recommendation, granting summary judgment to Plaintiffs on the issue of failing to provide adequate

---

[1]Plaintiffs assert that Defendants deposed all 15 Plaintiffs, in addition to two expert witnesses.  Plaintiffs deposed five City officials.

notice, but denying judgment on the issue of the adequacy of the post-deprivation hearing, citing the need for a more complete record (Doc. No. 194, 210). Following a stipulation at the Final Pretrial Conference that the issue of whether Plaintiffs were entitled to notice of the initial code violations was appropriate for resolution by summary judgment, the District Court found that the City was entitled to summary judgment on the Plaintiffs' initial violations due process claim (Doc. No. 210). The District Court thus found the following issues remained for trial: a) damages, if any, sustained by Plaintiffs because of the failure by the City to provide contemporaneous pre-deprivation notice; b) whether the post-deprivation process afforded the Plaintiffs was constitutionally prompt and, if not, whether and to what extent Plaintiffs were entitled to recover damages; and c) injunctive and declaratory relief (to be decided by the Court) (Doc. No. 210, at 13-14).

The parties filed a Joint Final Pretrial Statement, which itemized the relief sought by the 15 Plaintiffs (Doc. No. 181). Plaintiffs sought varying amounts of actual damages (all under $3,700.00) and $20,000 each for emotional distress.

On the eve of the trial period, Plaintiffs' counsel moved to withdraw from representation of Plaintiff Constance Lawrence, and Eric Golden appeared on her behalf.[2]

The case proceeded to a four day jury trial. At the close of the evidence, the Court granted the Defendants' motion for directed verdict regarding damages, ruling that Plaintiffs were entitled to nominal damages only.[3] The case was sent to the jury to determine whether the City and/or the Board

---

[2]The substitution was made necessary by the incarceration of Plaintiff Lawrence. Due to federal regulations, Plaintiffs' federally-funded counsel is prohibited from representing incarcerated persons.

[3]The minutes of the trial are not clear on this point. *See* Doc. Nos. 221 and 222. Absent a transcript or written ruling by the District Court, the Court accepts Plaintiffs' representation as to what occurred (which is not opposed by Defendants) as accurate. The Court notes, however, that although the Court held that Plaintiffs were entitled to nominal damages, no judgment awarding such damages has ever been entered, nor, apparently, has any Plaintiff moved for entry of same. Moreover, the issue of the amount of the nominal damages was not presented by the Plaintiffs in their Statement of Issues Remaining to be Resolved (Doc. Nos. 245, 246). Thus, although the Court found *entitlement* to nominal damages,

(continued...)

denied Plaintiffs' their right to a prompt and meaningful post deprivation hearing to challenge the condemnation. The jury returned verdicts against the City in favor of all of the Plaintiffs, and in favor of the Board, against the Plaintiffs (Doc. Nos. 227-241).

At the conclusion of the trial, the Court directed the parties to file statements regarding the issues remaining to be resolved. Plaintiffs indicated that the matter of Plaintiffs' entitlement to injunctive relief was the main issue remaining (Doc. No. 245). Defendant indicated that no issues remained (Doc. No. 242). The Court ruled that the City violated Plaintiffs' right to notice and a prompt and meaningful post deprivation hearing on the condemnation and that Plaintiffs were entitled to injunctive relief (Doc. No. 247). The Court directed the parties to brief suggested changes to the City's procedures. After the filing of their memoranda (Doc. Nos. 248, 249), the parties participated in a settlement conference with the undersigned regarding the terms of injunctive relief. The parties were able to reach agreement and the terms of the agreement were adopted as an order (and judgment) of the Court (Doc. No. 263). The Court retained jurisdiction to enforce the terms of the order, and to consider the issues of attorneys fees and costs. *Id.*

### THE FEE REQUESTS

In the first motion (the main request), Plaintiffs' seek compensation in the amount of $329,881.66 for counsel's services performed in this Court on the basis of the following lodestar and expenses:

---

[3](...continued)
no such award was ever made.

| TIMEKEEPER | HOURS | RATE | TOTAL |
|---|---|---|---|
| Peter Sleasman | 847.40 hrs | $250/hour | $ 211,850.00 |
| Cathy Lucrezi | 391.40 hrs | $250/hour | $ 97,850.00 |
| Andrea Costello | 36.10 hrs | $190/hour | $ 6,859.00 |
| Law Clerks | 21.30 hrs | $75/hour | $ 1,597.50 |
| LODESTAR TOTAL | | | $ 318,156.50 |
| Expenses | | | $ 11,725.16 |
| **TOTAL** | | | **$ 329,881.66** |

At hearing, Plaintiffs submitted an amended chart (Plaintiffs' Exhibit 1) which reflects further reductions, consistent with the opinions of Plaintiffs' expert witness, Charles F. Elsesser, Jr. Those reductions are:

| Attorney Sleasman | 807.20 hours | $250.00 per hour | $ 201,800.00 |
|---|---|---|---|
| Attorney Lucrezi | 316.80 hours | $250.00 per hour | $ 79,200.00 |
| Attorney Costello | 35.10 hours | $190.00 per hour | $ 6,669.00 |
| Law Clerks | 21.30 hours | $75.00 per hour | $ 1,597.50 |
| LODESTAR TOTAL | | | **$ 289,266.50** |

Plaintiffs also seek an additional, unspecified amount of attorney's fees and expenses connected with the evidentiary hearing conducted on the fee issue.

In addition to the main request, Mr. Golden and his firm, on behalf of Ms. Lawrence, sought $26,424.31 for counsel's services performed and expenses incurred on her behalf. The City of Orlando has settled this claim, leaving only the main request, as amended, for resolution.

### STANDARDS OF LAW

Plaintiffs assert that they are entitled to an award pursuant to 42 U.S.C. § 1988, as Plaintiffs prevailed against the City on their 42 U.S.C. § 1983 claim. In response, the City challenges Plaintiffs

self-designation as the prevailing party, and asserts that in this case, an appropriate fee is a "very low fee, which accurately reflects the results obtained" (Doc. No. 282).

In general, Section 1988 provides that, with respect to certain civil rights actions, including Section 1983 claims, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Whether Plaintiffs are entitled to all or part of their request turns on whether or not they are the prevailing party, within the meaning of this section.

In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the Supreme Court held that, under § 1988, a plaintiff may be considered a prevailing party if the plaintiff succeeds on "any significant issue in the litigation which achieves some of the benefit the part[y] sought in bringing suit." Thus, a party need not prevail on every issue in order to be entitled to an award of attorney's fees and costs. This is not to say, however, that such an award is automatic upon prevailing on *any* issue that results in *any* benefit, as the Supreme Court recognized in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

In *Farrar*, the plaintiffs sought seventeen million dollars in compensatory damages at trial against multiple defendants for violations of constitutional rights, but recovered only nominal damages against one defendant. Although the trial court awarded the plaintiffs $280,000.00 in fees under 42 U.S.C.A. § 1988, the Supreme Court affirmed the Fifth Circuit's reversal of the award. *Id.* Justice Thomas, in the majority opinion, reiterated *Hensley's* holding that "the degree of the plaintiff's overall success goes to the reasonableness of a fee award" and confirmed that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* at 114, 113 S.Ct. at 574. If a plaintiff's purpose is the recovery of damages, "a district court, in fixing

fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id*. at 114, 113 S.Ct. at 575.  If the amount and nature of damages awarded are small in comparison to what the plaintiffs sought, "the court may lawfully award low fees or no fees." *Id*. at 115, 113 S.Ct. at 575.  As the plaintiffs in *Farrar* had sought compensatory damages but, due to their failure to prove an essential element of their claim, obtained only nominal damages, they were entitled to no fees at all. *Id.*

Justice O'Connor, concurring with Justice Thomas in the judgment, explained that, in her view, the plaintiffs were not entitled to fees because theirs was a purely technical or Pyrrhic victory. *Id.* at 117, 113 S.Ct. at 576.  Justice O'Connor suggested three "indicia of success" factors that courts should consider in making the assessment as to whether a party prevailed sufficiently to warrant a fee award: (1) the difference between the amount recovered and the relief sought; (2) "the significance of the legal issue on which the plaintiff claims to have prevailed"; and (3) whether the litigation accomplished a "public goal." *Id*. at 121-22, 113 S. Ct. at 578-79.

Where such an analysis leads to the conclusion that Plaintiffs are the prevailing parties entitled to a fee award, the Court applies the familiar lodestar approach. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423 (11th Cir.1999).  A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

Factors to be considered when setting a fee include:  1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The going rate in the community is the most critical factor in setting the fee rate.  *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).

## ANALYSIS

### Were Plaintiffs the Prevailing Parties?

Although Plaintiffs prevailed in the sense that they received declaratory and injunctive relief on one of their claims against the City, the City contends that this victory was *de minimis* and technical, and does not warrant a fee award.  As set forth above, in order to determine whether Plaintiffs prevailed sufficiently to warrant an award of fees, the Court must look closely to the degree of success sought and obtained by Plaintiffs.  In this analysis, the Court utilizes the "indicia of success" factors, suggested by Justice O'Connor.

### The relief sought

The Court begins with the recognition that Plaintiffs did not prevail, in any sense of the word, on any claim against the Board or against Rhodes.  While these losses are relevant to the calculation of the amount of any reasonable fee to be awarded, they are not dispositive of whether Plaintiffs prevailed on their claims against the City.

The suit commenced with three Plaintiffs seeking emergency injunctive relief against the City to halt the condemnation and demolition of the apartment complex, to halt any adverse action that did not provide them with the opportunity for a hearing, and to obtain alternative housing (Doc. Nos. 1, 2). This relief was denied by the Court, as the City represented that it would provide a hearing. The Court finds that Plaintiffs did not prevail on this initial request.

The determination of whether a Plaintiff prevailed sufficiently to warrant fees, however, is not about who won the battle, but who (ultimately) won the war. Plaintiffs final Complaint (Doc. No. 33) set forth the following claims against the City: Count One: Denial of Due Process -- Lack of Notice and Hearing (either pre-deprivation or, if emergency considerations made that impossible, a prompt post-deprivation hearing); Count Two: Denial of Due Process -- Based on Written Policy (failure to provide for meaningful notice and hearing to tenants of a building subject to citation for violations of the City Code); and Count Four: Fair Housing violation. Each count sought declaratory and injunctive relief, damages, and attorney's fees and costs. Plaintiffs estimated their damages at slightly over $20,000 each.

**The relief obtained**

It is undisputed that Plaintiffs did not prevail against the City on the count alleging a Fair Housing Act violation. Further, as detailed above, Plaintiffs were unsuccessful on Count Two in that the Court granted summary judgment in favor of the City on Plaintiffs' claim that they were constitutionally entitled to notice of building violations. As for the remaining claim, consistent with the jury verdict, the Court found that the City violated Plaintiffs' right to notice and a prompt and meaningful post deprivation hearing on the condemnation, and further, that Plaintiffs were entitled

-10-

to injunctive relief (Doc. No. 247).  Although each Plaintiff sought damages in excess of $20,000, the Court found that Plaintiffs were entitled to nominal damages only.

Thus, of the six total claims set forth in four counts against one or more of the three Defendants, Plaintiffs partially prevailed (in that Plaintiffs did not recover the entire relief sought) on only one claim against only one Defendant.  If numbers alone told the tale, Defendant would be justified in characterizing this relief as *de minimis.*   However, while this cannot be termed an overwhelming success, total victory is not required.  As noted by the Supreme Court, a plaintiff may be considered a prevailing party if the plaintiff succeeds on "any significant issue in the litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley, supra.*  Whether the issue Plaintiffs prevailed on was "significant"is the second indicia of success.

### The significance of the legal issue and the public goal

In essence, the Plaintiffs were successful in changing a long standing City policy that failed to take the due process rights of tenants into account when a residential building is being condemned. While the Court did not find that the City wrongfully evicted the tenants, it did find that such an eviction is appropriate only when accompanied by the right to a prompt hearing and notice of same. A man's home is his castle, and our courts have consistently upheld the inherent right to reside in one's castle, free from any dispossession that is not consistent with due process.  This is no small or trivial matter.

In evaluating the significance of the legal issues, the Court must take into account that successful civil rights actions vindicate a public interest. *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001).  Indeed, the relief obtained here, while prospective in nature, constitutes a fundamental shift in the way the City looks at evictions, which benefits all of the City's present and

future residents who happen to be tenants.  Indeed, at argument, Plaintiffs presented testimony that the finding that the City unconstitutionally denied Plaintiffs' rights to a prompt and meaningful post-deprivation hearing had a significant public benefit that extended beyond the residents of Orlando, with other cities noting the decision and reviewing their policies accordingly.  As stated by the Eleventh Circuit Court in *Popham v. City of Kennesaw,* 820 F. 2d 1570, 1580 (11th Cir. 1987): "In certain instances the plaintiff's relief may engender specific spillover benefits for non-parties.  In those instances, the public benefit may assume a principal significance in the court's calculus."  Here, Plaintiffs may have only prevailed on one issue, but it was the cornerstone of their case.  There can be no doubt that the issue Plaintiffs' successfully prosecuted was significant.

The City maintains that even in civil rights cases where a public goal is present, the Court must look carefully at the degree of success, and is justified in making appropriate reductions for unsuccessful claims, citing *Popham, supra.*  In that case, the plaintiff prevailed on only one out of eight claims against the police, and not at all against the municipality, and the appellate court held that the district court properly reduced the attorney's fee by approximately two thirds.  820 F. 2d at 1578-1581.  The City points to the nominal amount of compensatory damages recovered here and the fact that Plaintiffs did not prevail against the two other co-defendants as justification for a similar significant reduction.  The Court is unpersuaded.

Unlike the *Popham* plaintiff,  Plaintiffs here did prevail against the municipality, and the City was made to change its policies and procedures under Court order.  Thus, the Court finds this case to be more akin to *Villano v. City of Boynton Beach*, *supra.*  There, the appellate court recognized that where a plaintiff prevails against a municipality, "[t]hat distinction carries legal significance because vindicating a constitutional right against a municipal defendant heightens the public benefit created

by a lawsuit." 254 F.3d at 1307.  That public benefit is, in itself, a "distinct measure of success" in civil rights actions, and to avoid undermining the purpose of Section 1988, "a court must account for that distinct measure of success when calculating an award of fees and costs."  *Id.* (internal citations omitted).

Considering all of the relevant factors, the Court concludes that Plaintiffs were, indeed, prevailing parties in that they "succeeded on a significant issue in the litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley.*

### Were "excellent" results achieved?

Precedent counsels that not only must the Court determine whether the parties prevailed on a qualitative basis, the Court must also consider the degree of that success on a quantitative basis.  In *Hensley,* supra, the Supreme Court noted that when a plaintiff achieves "excellent" results, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." 461 U.S. at 435 (noting that an attorney should recover a fully compensable fee where excellent results were obtained).  The Eleventh Circuit has interpreted this direction to require consideration of whether a plaintiff obtained excellent results, as a necessary element of a Section 1988 analysis.  *Villano,* 254 F. 3d at 1308.  The Court proceeds to that analysis below.

Excellence, like beauty and morality, is an intangible concept, incapable of precise and uniform definition.  It is, indeed, a concept that is defined more often by its absence, than by any inherent marking.  Despite a clear definition, we instinctively recognize the exceptional, and are able to distinguish between excellence, almost excellent, and an unexceptional effort.  Here, considering the history of this case, the relief sought, the eventual result, and the significance of the issues presented, the Court cannot say that the results reached were "excellent".

As set forth in detail above, at the inception of this case, the scope of relief sought and the goals of the litigation were far broader than the ultimate success achieved. Indeed, the relief ultimately obtained was solely a public benefit, prospective in nature. The individual Plaintiffs received nothing of value and the basis of the litigation – namely, that the condemnation and evictions of these Plaintiffs were premature or unnecessary – was never established. An excellent result would have included some specific and individual vindication, in addition to the future public benefit. The Court therefore concludes that the result achieved here, while important and significant, was, alas, not excellent. As such, Plaintiffs are not entitled to the fully compensable fee that they seek.

Having determined that Plaintiffs are prevailing parties, who achieved good, but not excellent, results, the Court proceeds to the calculation of reasonable fees available to Plaintiffs in view of their limited success.

### THE CALCULATION

In view of the real but limited success present here, the Court applies the above standards in order to determine the amount of reasonable fees to be awarded.

**The Hours**

As set forth in the chart, Plaintiffs' counsel seeks compensation for more than 1,100 hours spent on the prosecution of the case. In its brief, the City objects to the number of hours claimed, noting (correctly) that "fee applicants must exercise billing judgment," *citing Barnes v. ACLU,* 168 F. 3d 423, 428 (11th Cir. 1999). While acknowledging a fee applicant's obligation to prune out excessive, redundant or unnecessary hours, however, the *Barnes* court also noted the following:

> Those opposing fee applications have obligations, too. In order for courts to carry out their duties in this area, "objections and proof from fee opponents" concerning hours that should be excluded must be specific and "reasonably precise."

-14-

*Barnes,* 168 F. 3d at 428.   Here, the only specific objection noted in its brief (or the supporting Affidavit of Attorney Bowling) relates to the claim for over 300 hours of trial preparation.   Indeed, the City does not even suggest what a reasonable fee should be in this case; stating only that it should be "very low." (Brief at 15).   Thus, the City's generalized objections to a lack of billing judgment are not helpful in determining a reasonable fee award.

The testimony presented at hearing has convinced the Court that a fair degree of billing judgment went into the final calculation presented by Plaintiffs.   Nonetheless, the final calculation is still flawed, because it contains redundant hours or hours excessive for particular tasks and because it is inclusive of too much of the time reasonably spent on the entire case.   As set forth above, the Court finds that the limited success of Plaintiffs does not justify a fully compensable fee.   Thus, the Court must gauge "on a claim by claim basis, whether an overlap between claims and the final judgment was sufficient" to warrant the fees. *Villano,* 254 F.3d at 1309.   Here, reductions are necessary.

As the time sheets here are so voluminous, an hour-by-hour analysis is impracticable.   *See Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir. 1994).   Plaintiffs have provided, by way of summary, a table which identifies the various activities conducted in the case, and the corresponding time spent on each activity.   At hearing, in a further exercise of billing judgment, the original chart was modified in accordance with analysis undertaken by consultants for Plaintiffs.   See Plaintiffs' Exhibit 1 (Doc. No. 292).   It is this modified total that the Court uses as a starting point.

| ACTIVITY | SLEASMAN | LUCREZI | COSTELLO | LAW CLERKS |
|---|---|---|---|---|
| Pre-filing Activity | 34.50 | 4.85 | | |
| Post-filing Activity | 231.90 | 217.20 | 3.40 | |
| Client Contacts | 12.60 | 3.45 | | |
| Discovery | 181.10 | 16.25 | | |
| Research | 16.70 | 3.15 | 22.90 | 21.30 |
| Mediation | 28.40 | 27.05 | | |
| Trial Preparation | 250.70 | 81.80 | 9.80 | |
| Trial | 42.40 | 30.25 | | |
| Post-trial | 44.80 | 4.55 | | |
| Settlement Activity | 4.30 | 1.50 | | |
| Fee application | 0 | 1.50 | | |
| Total | 847.4 | 391.55 | 36.10 | 21.30 |
| Modified Total per Exhibit 1 | **807.2** | **316.8** | **35.10** | **21.30** |

(Doc. No. 276).

The Court applies the *Johnson* factors[4] and concludes that the total amount of hours claimed is still excessive in light of the limited success achieved. For example, the time sheets make clear that the pre-filing and post-filing activity included numerous hours spent on the unsuccessful petition for temporary restraining order. Moreover, the research and discovery time included time spent on other

[4]As set forth above, these factors include: 1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

unsuccessful claims, such as the Housing Act claim and the claims against the individual defendant, all discrete from the constitutional issue. While the Court is not unmindful of the difficulties inherent in prosecuting this litigation, especially in view of the number of clients and the fact that counsel is out of town, the issue on which Plaintiffs' prevailed was a relatively straightforward legal issue. Considering that counsel was well experienced in civil rights litigation (a factor which will be reflected in the calculation of a reasonable rate), the legal issues were not so novel or complex as to warrant the well over 300 hours spent on trial preparation time, over and above time spent on research, motion practice and discovery.

That said, the Court recognizes that the City is a formidable opponent, and the matter did proceed through dispositive motions, an appeal,[5] mediation, jury trial and various post-trial matters. Moreover, although some issues were separable, some of the work properly overlapped. Even if the sole successful issue was the only issue prosecuted, the Court suspects that the City would still have deposed Plaintiffs (albeit, perhaps for less time), and the City's procedures would still need to be researched and briefed. Thus, the Court finds that a 40% reduction in time across the board is fair and reasonable and recommends an award of same.

**Reasonable Rates**

The City objected at hearing to the hourly rates claimed by Plaintiffs' counsel, in light of the going rate in the community for lawyers with similar experience. It appeared to the Court that it was not counsel's experience that was at issue; rather, the nature of the practice. According to their Declarations and the testimony at argument, Attorneys Sleasman and Costello are well experienced legal aid/public interest lawyers. Their practice consists of various aspects of poverty law, including

---

[5] Plaintiffs do not seek compensation for time spent on appellate work.

civil rights litigation.  As such, they do not "bill" their clientele, and therefore do not have established hourly rates for their time. Ms. Lucrezi is presently in private practice, writing leases and handling evictions.  She testified to a legal aid background, with substantial federal litigation experience, representing indigent clients primarily in housing matters.  These attorneys base their proposed hourly rates on what other attorneys in prestigious "high end" law firms are charging in this community for federal litigation.  While marginally relevant, the Court does not find the comparison to be apt.

The hourly rate charged by a big firm for commercial representation is a function not only of the quality of the representation in relation to the task at hand, but also many other factors, not the least of which is what a high-end client is willing and able to pay.  Hourly rates compensate the firm for what is usually a substantial overhead and other factors not pertinent to Plaintiffs' counsel.  Absent any evidence that Plaintiffs' counsel could command those fees in the general marketplace, a mere years-in-practice comparison is not valid.

The question, however, is not "what are other lawyers charging their clients for litigation" but "what is the prevailing market rate in this community for *similar* services by lawyers of *reasonable comparable* skills, experience, and reputation." *Norman,* 836 F. 2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96, n. 11 (1984).)  The Court heard conflicting testimony regarding the calculation of a reasonable rate for these services.  On one hand, the rates suggested by Plaintiffs are within the range of rates charged for other federal litigation matters by attorneys with like experience and skills, albeit, at the high end of the range.  On the other hand, plaintiffs' work differs from corporate defense work and the rates claimed by Plaintiffs' counsel well exceed those a reasonable plaintiff would be willing (or able) to pay for the type of services provided.  Indeed, Mr. Sleasman acknowledged at hearing that he has never been paid $250 an hour by any client, or awarded $250 an hour by any court

for fees.  Thus, while Plaintiffs' counsel are  probably correct in their opinion that lawyers of similar experience would command these rates for other types of civil litigation, the Court agrees, in part, with the testimony of the City's expert that rates for plaintiff's civil rights representation typically range from $125 to $175 per hour (Doc. No. 287).  As is clear from the foregoing discussion, however, this case is not "typical," and a somewhat higher rate is justified.

Based on the foregoing and in view of the skills and experience of Plaintiffs' counsel, as set forth in their Declarations and at hearing, the Court finds  a reasonable rate for  Mr. Sleasman and Ms. Lucrezi is $190 per hour; for Ms. Costello, $150 per hour; and $60 an hour for law clerk time.[6] The lodestar is therefore calculated as follows:

| TIMEKEEPER | HOURS (after 40% reduction) | RATE | TOTAL |
| --- | --- | --- | --- |
| Sleasman | 484.32 | $190.00 | $92,020.80 |
| Lucrezi | 190.08 | $190.00 | $36,115.20 |
| Costello | 21.06 | $150.00 | $3,159.00 |
| Law Clerks | 12.78 | $60.00 | $766.80 |
|  |  | **Grand Total** | **$132,061.80** |

The Court finds these hours and rates to be reasonable in light of all of the factors considered as set forth above, and **respectfully recommends** that an award of attorney's fees in that amount be made to Plaintiffs' counsel.

---

[6]In the Court's experience, $60 an hour is a reasonable and customary charge for law clerk time.

**LITIGATION EXPENSES**

In their papers, Plaintiffs seek $11,762.47 in litigation expenses.  As presented, Southern Legal Counsel, Inc. expended costs of $10,328.49 (including copying costs, court reporter, mediation costs, travel expenses and witness fees) and co-counsel Cathy Lucrezi incurred $1,433.98 in expenses (the vast majority in meals and parking charges).  *See* Declaration of Cathy Lucrezi, Exhibit A; Declaration of Carolyn M. Keene.  The City has filed no objections to these charges, although they cross-examined witness Jodi Siegel, the Executive Director of Southern Legal Services, as to some of the charges, at hearing.

The single most significant expense falls under the travel expense category.  At hearing, Mr. Sleasman and Ms. Lucrezi testified to numerous trips to Orlando in the course of this litigation.  While normally the Court would look at such an expense with a jaundiced eye, the Court allows the expenses here, finding that retaining out of town counsel was appropriate.  Indeed, the City's own expert testified that he knew of no local counsel that would have undertaken this representation.  Thus, absent any objections, it is **respectfully recommended** that Plaintiffs' be awarded litigation expenses in the requested amount of $11,762.47.

*CONCLUSION*

The Court **respectfully recommends** that the motion be **granted, in part**, and Plaintiffs be awarded attorney's fees and litigation expenses in the total amount of $143,824.27 ($132,061.80 fees plus $11,762.47 litigation expenses).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 22, 2004.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy